## UNITED STATES CIRCUIT COURT.

M. KNOEDLER agt. AUGUSTUS SCHELL.

SAME agt. SAME.

IRA BLISS agt. SAME.

Where in an action against a *collector* of customs judgment is obtained against him for the amount of *duties* exacted and received by him, under protest, for goods imported, the owner-plaintiff can issue his execution against, and the collector is liable *personally*, for the amount of the judgment.

*New York, January,* 1861.

THIS is a motion for an order to set aside executions issued upon judgments rendered in the above suits, upon the ground that they were issued without authority of law.

JAMES I. ROOSEVELT, *for motion.*
A. W. GRISWOLD, *opposed.*

SMALLEY, D. J. It appears that the suits were for an excess of duties illegally exacted by the defendant, as collector of the port of New York, on various importations of merchandise, paid under protest, in which the plaintiffs

recovered judgment before Justice NELSON, at an early day of the present term.

The defendant claims that under the acts of congress of the 3d of March, 1839, chapter 82, and of 26th of February, 1845, chapter 22, executions in such cases could not rightfully issue against his private property; that the intention and true construction of the act of 1845, was to enable the party aggrieved to maintain an action at law, to ascertain and try the legality and validity of such demand and payment of duties, and, if established, to petition to the secretary of the treasury, or to congress for payment thereof, but not to enforce collection of the collector. If that is the sole purpose and purport of the acts, these executions were irregularly issued, and must be set aside; otherwise they are regular and according to due course of law.

Previous to the passage of the act of the 3d of March, 1839, it is well settled, that at common law, a person might sustain an action for money had and received against one who wrongfully withheld goods, upon an illegal claim or demand from him, *colore officii*, and thus compelled him to pay money to obtain them.

Upon this point there is no conflict of authority, either in England or America. (*Shaw* agt. *Woodcock*, 7 *Barn. and Cres.*, 73, 84; *Irving* agt. *Wilson*, 4 *Term*, 485.)

The last case, like the present, was against an officer of the excise or customs.

There are many other English authorities to the same point, but it is unnecessary to cite them, as the question has been expressly decided, upon the most full and solemn deliberation, in two cases, by the supreme court of the United States. (*Elliott* agt. *Swartwout*, 10 *Peters*, 137; *Bend* agt. *Hoyt*, 13 *Peters*, 263, 267.)

Both of these were actions against the defendants for money illegally demanded by and paid to them, *colore officii*, as collectors of the port of New York. After these decis-

ions, collectors of the customs claimed the right to retain money received by them for the government, as an indemnity against claims for excess of duties collected; and in many cases this retainer, with or without warrant of law, was resorted to, occasioning inconvenience, and often heavy losses to the government by the ultimate bankruptcy and defalcation of the collectors.

To remedy this evil the second section of the act of 1839, was passed.

That section provides: " That from and after the passage of this act, all money paid to any collector of customs, or to any person acting as such, for unascertained duties, or for duties paid under protest, against the rate or amount of duties charged, shall be placed to the credit of the treasurer of the United States, kept and disposed of as all other money paid for duties is required by law, or by regulation of the treasury department, to be placed to the credit of the treasurer, kept and disposed of; and it shall not be held by said collector or person acting as such, to await any ascertainment of duties, or the result of any litigation in relation to the rate or amount of duty legally chargeable and collectable in any case where money is so paid; but whenever it shall be shown to the satisfaction of the secretary of the treasury that in any case of unascertained duties, or duties paid under protest, more money has been paid to the collector, or to the person acting as such, than the law requires should have been paid, it shall be his duty to draw his warrant upon the treasurer in favor of the person or persons entitled to the over-payment, directing the said treasurer to refund the same out of any money in the treasury not otherwise appropriated."

Afterwards, the question as to the construction to be given to that act, came before the supreme court of the United States, at the January term in 1845, in the case of *Cary* agt. *Curtis*, (3 *How. R.*, 236.)  That, too, was an action to recover money paid to Curtis as collector of the

port of New York, for duties. A majority of the court held that the common law right of action against the collector was, by implication, taken away by that statute, and say,

" That as the collector, since the statute, had power neither to retain nor to refund, there could, as between him and the plaintiff, arise no privity nor implication, on which to found the promise raised by the law, only where an obligation to undertake or promise exists; and that, therefore, the action for money had and received could not in this case be maintained, but was barred by the act of congress of 1839."

A minority of the court, Justices STORY and McLEAN dissented, and were of opinion that the statute of 1839 did not bar the common law right of action against the collector.

Immediately after this decision was pronounced, congress passed an act, approved the 26th of February, 1845, which says—" that nothing contained in the 2d section of the act of 3d of March, 1839, shall take away, or be construed to take away or impair the rights of any person or persons who have paid or shall hereafter pay money, as and for duties under protest, to any collector of the customs or other person acting as such, in order to obtain goods, wares, or merchandise, imported by him or them, or on his or their account, which duties are not authorized or payable in whole or in part by law, to maintain any action at law against such collector, or other person acting as such, to ascertain and try the legality and validity of such demand and payment of duties, and to have a right of trial by jury, touching the same, according to the due course of law. Nor shall anything contained in the 2d section of the act aforesaid be construed to authorize the secretary of the treasury to refund any duties paid under protest; nor shall any action be maintained against any collector to recover the amount of duties so paid under protest, unless the said protest was made in writing, and signed by the claimant,

at or before the payment of said duties, setting forth distinctly and specifically the grounds of objection to the payment thereof."

What was the purpose and intention of congress in passing that act? What was the mischief it was intended to remedy? We have seen that the act of 1839, deprived citizens of a common law right, and compelled them, when money had been illegally extorted from them, *colore officii*, to seek redress, by an appeal to the discretion and judgment of the secretary of the treasury, under whose instructions the money had been exacted—certainly, a slow, vague, and very uncertain remedy. This was considered so unjust, that a minority of the court in the case of *Cary* agt. *Curtis*, held that if such was the construction to be given to the act of 1839, it was unconstitutional; and it is to be noted, that immediately after the decision of the court in that case, the act of 1845 was passed through both branches of congress, and approved by the president. It is evident that only a few days could have elapsed between them.

From these circumstances, as well as from the wording of the act itself, the inference would seem to be irresistible, that it was intended to restore the party aggrieved to his common law remedy, of which the act of 1839 had deprived him.

It authorizes an " action at law," " a right to a trial by jury," " according to the due course of law." Again, it says—" Nor shall any action be maintained against any collector to recover the amount of duties so paid, * * unless a protest was made in writing." If it had been intended to give the plaintiff the right by suit at law, only to ascertain and try the legality and validity of such demand and payment of duties, and when he had succeeded in establishing his claim, compel him to seek satisfaction by an appeal to the conscience of the secretary of the treasury, certainly some words would have been used to express such intent.

Knoedler agt. Schell.

It is argued, however, that inasmuch as the law makes it the duty of the collector to pay all moneys into the treasury, and he is forbidden to retain any in his own hands, it is hard to make him personally responsible for duties wrongfully exacted. But there is no law compelling a person to accept the office of collector. If he does, it is a voluntary act, and he must take it subject to all the burdens and responsibilities which the law imposes upon it. Besides, it should be borne in mind, that the right of a plaintiff to recover in such cases is based solely upon the tortious action of the collector, in compelling him, under color, but in violation of law, to pay money to obtain possession of his property.

Upon every principle of justice and equity, therefore, if either party must suffer, it should be the wrong-doer.

Another fact is worthy of consideration in determining this question. The act of 1845 has been in force almost sixteen years, during which time thousands of suits have been brought, and recoveries had, against the collectors of this and other ports; and it is understood that no question has ever heretofore been raised as to the personal liability of the collectors for the sums thus recovered.

The contemporaneous construction of that act, and such long acquiescence therein, ought not now to be overturned, except upon the most clear and satisfactory grounds. The court have no doubt but that the executions in these cases were regularly issued, and the motion to set them aside is overruled.